ALFRED J. GIORDANO, Respondent, *v.* METROPOLITAN JOCKEY CLUB, Appellant.

Supreme Court, Appellate Term, Second Department, May 23, 1941.

*Davies, Auerbach, Cornell & Hardy* [*William J. Carr* of counsel], for the appellant.

*Harry J. McDermott,* for the respondent.

*John J. Bennett, Jr.,* Attorney-General, *amicus curiæ.*

PER CURIAM. The plaintiff recovered judgment in the court below in an action to recover the sum of $104, representing the amount alleged to be due on two pari-mutuel tickets purchased by the plaintiff from the defendant. The action was tried on the following stipulated facts: On May 7, 1940, the defendant operated the Jamaica Race Track where it conducted pari-mutuel betting pursuant to the provisions of the so-called Pari-Mutuel Revenue Law (Laws of 1940, chap. 254). The plaintiff, a patron of the track on that day, purchased two " Win " pari-mutuel tickets on horse No 5 named Buena Oro, running in the seventh race. At the conclusion of the race Buena Oro was third. This result having been displayed on the mutuel indicator board, the plaintiff, believing

his tickets to be valueless, destroyed them and left the track Thereafter, the two horses which finished ahead of Buena Oro were disqualified and Buena Oro was declared the winner. This was displayed on the mutuel indicator board and immediately upon discovering the disqualification of the first two horses the plaintiff, on the same day, made personal demand on the defendant to pay him the sum of $104, representing the amount due him on the two tickets which he had destroyed. On the following day the plaintiff made demand on the defendant in writing for this payment.

There are two " Win " tickets on Buena Oro, horse No. 5, in race No. 7, on that day outstanding and unpaid, and the defendant has in its possession the $104 which would be applicable on said tickets.

Based upon an opinion by the Attorney-General interpreting section 12 of chapter 254 of the Laws of 1940 to mean that payment on a winning pari-mutuel ticket cannot be made unless the ticket is presented, the defendant refused to make payment to the plaintiff.

Section 12 reads as follows: " Disposition of unpaid money due on account of pari-mutuel tickets not presented. The sum held by any corporation or association authorized to conduct pari-mutuel betting for payment of outstanding pari mutuel tickets shall be retained by such corporation or association for payment of such tickets until April first of the succeeding year. Within ten days thereafter, the balance of such sum remaining unclaimed shall be paid over to the general fund of the State treasury. If subsequent to the first of April a pari-mutuel ticket is presented for payment to the corporation or association by which the same was sold, such corporation or association shall pay the same and may charge the amount thereof against unpaid money similarly accumulated on account of pari-mutuel tickets not presented for payment."

This section was designed to provide for the disposition of funds held by any corporation or association authorized to conduct pari-mutuel betting for the payment of outstanding pari-mutuel tickets. It does not expressly prohibit payment to those who lose or destroy their tickets although such payments, when made after April first, deprive the corporation or the association of the right to " charge the amount thereof against unpaid money similarly accumulated on account of pari-mutuel tickets not presented for payment."

If this means that after April first tickets must be presented before payment can be made, it would be reasonable to infer that the failure to impose any such requirement with respect to payments made before April first was advertent and reflected an

intent to sanction such payments even though the tickets were not presented. Support for this conclusion is to be found in section 9 of the act which, among other things, provides that " Every corporation or association authorized under this act to conduct pari-mutuel betting at a race meeting on races run thereat, shall distribute all sums deposited in any pari-mutuel pool to the winners thereof, less ten per centum of the total deposits plus the breaks." Here is a clear direction to distribute the sums deposited in the pari-mutuel pool not necessarily to those presenting tickets but to the " winners."

The omission to provide for lost or destroyed tickets does not signify an intent to leave the purchasers thereof without remedy, for in the absence of a clear and explicit expression to the contrary, it must be presumed that there was no intent to change the rule of common law (*Transit Comm.* v. *Long Island R. R. Co.*, 253 N. Y. 345, 355) which permits recovery on lost or destroyed instruments. (*Des Ar's* v. *Leggett*, 16 N. Y 582; *Frank* v. *Wessels*, 64 id. 155; *Mierke* v. *Jefferson County Savings Bank*, 208 id. 347.)

Since upon the facts stipulated the defendant cannot possibly be subjected to double liability by reason of the plaintiff's destruction of the two tickets, there is no necessity for resort to equity for the purpose of exacting indemnity The action at law was properly maintained.

The judgment should be affirmed, with twenty-five dollars costs to the plaintiff.

Present — SMITH, McCOOEY and STEINBRINK, JJ.