Clinton HOCHHALTER, Plaintiff
and Appellee,

v.

DAKOTA RACE MANAGEMENT, a
General Partnership, Defendant
and Appellant,

and

James River Aerie # 2337, a
Corporation, Defendant.

Civ. No. 940050.

Supreme Court of North Dakota.

Dec. 2, 1994.

James R. Jungroth, of Mackenzie, Jungroth, Mackenzie & Reisnour, Jamestown, for plaintiff and appellee.

Wayne O. Solberg, of Solberg, Stewart, Miller & Johnson, Fargo, for defendant and appellant.

SANDSTROM, Justice.

Dakota Race Management (DRM) has appealed a district court judgment in favor of Clinton Hochhalter for DRM's allocated share of the amount of money Hochhalter would have won if he had been issued the ticket he requested when betting on a parimutuel horse race. We reverse.

I

DRM provides electronic simulcast racing services to James River Aerie # 2337 (Jamestown Eagles) and other operators conducting off-track parimutuel betting on horse races viewed on television at the simulcast site. DRM provides the computer terminals for taking bets at the simulcast site and trains the tellers who operate the equipment. A patron places a bet through a teller who uses a computer keyboard to record the bet and produce a ticket for the patron. The ticket shows the amount of the bet, the horse selection, and the nature of the bet.

On October 3, 1992, Hochhalter placed a $2.00 bet on a twin trifecta, which involves selecting the first, second, and third place horses in two races. Hochhalter correctly selected the first three horses in the first trifecta, which entitled him to participate in the second race of the twin trifecta. He took his winning ticket from the first race to the teller to make his selections for the second race. The teller had trouble entering the bet and telephoned DRM for assistance. The teller entered Hochhalter's selections and a ticket was issued. Almost immediately, betting was shut down by the track steward and the totalisator was locked.

Neither the teller nor Hochhalter examined the ticket, except to ascertain it reflected Hochhalter's selection of horses. The ticket issued to Hochhalter for the second race was for a straight trifecta, rather than for a twin trifecta. Hochhalter correctly se-

lected the first three horses in the second race included in the twin trifecta. Hochhalter was not included in the twin trifecta parimutuel pool, and he refused payment of the smaller amount he was entitled to collect on the straight trifecta.

Hochhalter sued DRM and the Jamestown Eagles for breach of contract and negligence and sought to recover the amount he would have won ($6,257.60) if he had been issued the correct ticket for the second race of the twin trifecta. The trial court found Hochhalter not negligent, Jamestown Eagles 30 percent negligent, and DRM 70 percent negligent. Judgment was entered in favor of Hochhalter against Jamestown Eagles for $1,877.28 plus 30 percent of his costs and disbursements, and against DRM for $4,380.32, plus 70 percent of his costs and disbursements. DRM appealed.[1]

The trial court had jurisdiction under Art. VI, §§ 1 and 8, N.D. Const., and N.D.C.C. § 27–05–06. This court has jurisdiction under Art. VI, §§ 1 and 2, N.D. Const., and N.D.C.C. § 28–27–01. The appeal was timely under Rule 4(a), N.D.R.App.P.

## II

DRM contends recovery is precluded by N.D.A.C. § 69.5–01–08–11,[2] which provides, in part:

"1. No parimutuel tickets may be sold except by the association conducting the races on which such wagers are made, and the same must be sold only at regular 'seller' windows properly designated by signs showing the type and denomination of tickets to be sold at such windows if there are restrictions of any kind. No parimutuel tickets may be sold after the totalisator has been locked and *no association is responsible for ticket sales entered into but not completed by issuance of a ticket before the totalisator has been locked.*

"2. Any claim by a person that the person has been issued a ticket other than that which the person requested must be made before such person leaves the seller window and before the totalisator is locked." (Emphasis added.)

DRM argues the underscored part of subsection 1 "is clear and unambiguous in absolving any association from responsibility for ticket sales which are entered into but not completed before the totalisator has been locked" and contends "the transaction requested by Hochhalter was not completed before the totalisator was locked because the teller failed to issue the appropriate ticket." The record establishes, however, Hochhalter was issued a ticket and left the window. A ticket sale was "entered into" and "completed by issuance of a ticket," even though the ticket issued was not the one requested.

Hochhalter admits he did not make a claim that he had "been issued a ticket other than that which [he] requested" before he left the seller window and before the totalisator was locked. Hochhalter's claim is, therefore, barred by N.D.A.C. § 69.5–01–08–11(2). "One who gambles must do so in accordance with the rules of the game." *Mattson v. Hollywood Turf Club*, 101 Cal.App.2d 215, 225 P.2d 276, 279 (1950).

As DRM argues, other "courts have uniformly and consistently held that a bettor's right to collect winnings is absolutely conditioned upon presentation of a winning ticket." *See Mattson v. Hollywood Turf Club; Valois v. Gulfstream Park Racing Ass'n, Inc.*, 412 So.2d 959 (Fla.App.1982); *Seder v. Arlington Park Race Track Corp.*, 134 Ill.App.3d 512, 89 Ill.Dec. 657, 481 N.E.2d 9 (1985); *Bourgeois v. Fairground Corp.*, 480 So.2d 408 (La.App.1985); *Bastone v. Yonkers Racing Corp.*, 79 Misc.2d 240, 360 N.Y.S.2d 149 (App. Term 1973); *Hochberg v. New York City Off–Track Betting Corp.*, 74 Misc.2d 471, 343 N.Y.S.2d 651 (Sup.Ct.1973); *Carr v. State*, 30 Misc.2d 983, 221 N.Y.S.2d 636 (Ct.Cl.1961);

---

1. Jamestown Eagles satisfied the judgment against it and is not a party to this appeal.

2. At oral argument, Hochhalter contended that N.D.A.C. § 69.5–01–08–11 was an invalid exercise of administrative authority by the North Dakota Racing Commission, which had no authority to exempt anyone from the tort law that otherwise applies. Hochhalter did not raise this issue in the trial court and we, therefore, will not address it. *See, e.g., In Interest of B.D.,* 510 N.W.2d 629, 632 (N.D.1994).

*Holberg v. Westchester Racing Ass'n*, 184 Misc. 581, 53 N.Y.S.2d 490 (App. Term 1945); *Oregon Racing Comm'n v. Multnomah Kennel Club*, 242 Or. 572, 411 P.2d 63 (1966).

The court in *Mattson v. Hollywood Turf Club*, 225 P.2d at 279, explained the parimutuel system of betting:

> "A licensed track sells tickets and acts as custodian of the funds, which are accumulated in pools for win, place and show; the track takes the share of its partner, the State, and its own share, from the top, and divides what is left in the several pools among the holders of winning tickets. The tickets in a given pool in a given race are identical as to form. A holder who has lost his ticket has no means of identifying it. Possession is his only evidence of ownership. It is also the only evidence upon which the track makes distribution.... Such are the terms offered to the betting public, and they constitute the essential features of the implied contract between the track and its bettors."

"[T]he nature of the pari-mutuel system of betting necessarily requires a ticket to evidence the bettor's participation in the pool and ... payment could not practicably be made without presentation of such ticket." *Aliano v. Westchester Racing Ass'n*, 265 App.Div. 225, 38 N.Y.S.2d 741, 745 (1942). Without "the purchase and presentation of a winning ticket," a complaint alleging breach of contract and negligence of the issuance of the wrong tickets does not state a cause of action. *Bastone v. Yonkers Racing Corp.*, 360 N.Y.S.2d at 150. "The right of a bettor to a winning share results not from buying a ticket but solely from having a ticket which evidences the winning bet." *Bourgeois v. Fairground Corp.*, 480 So.2d at 409. Without a winning ticket, Hochhalter's complaint is insufficient as a matter of law. *Seder v. Arlington Park Race Track Corp.* Because he did not have a winning ticket and did not claim an error before leaving the window, Hochhalter did not join the pool of participants entitled to share in the winnings of the twin trifecta. "Since plaintiff does not possess a winning ticket, he cannot recover payment of a winning share." *Hochberg v. New York City Off–Track Betting Corp.*, 343 N.Y.S.2d at 655.

 DRM, as the owner of the machine involved, owed no duty to Hochhalter. *Bourgeois*. DRM's contract with the Jamestown Eagles to provide electronic simulcast racing services specifically excludes any duty to others. Gambling differs from other business transactions and ordinary remedies are not usually available to enforce gambling debts. *Carr*. "Where there is a statute applicable to a gambling contract, recovery is enforceable only in accordance with its provisions." *Carr*, 221 N.Y.S.2d at 638. Recovery is enforceable only in accordance with N.D.A.C. § 69.5–01–08–11(2). Because he did not make a claim that he was issued a ticket other than what he requested before he left the seller window, Hochhalter is barred from recovery.

### III

The judgment is reversed.

VANDE WALLE, C.J., and NEUMANN, LEVINE and MESCHKE, JJ., concur.